IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE COLORADO RIVER INDIAN          )
TRIBES                             )
Route 1, Box 23-B                  )
Parker, AZ  85344                  )
                                   )
               Plaintiff,          )
                                   )
        v.                         )
                                   )
DIRK KEMPTHORNE,                   )
SECRETARY OF THE INTERIOR          )
U.S. Department of the Interior    )
1849 C Street, N.W.                )
Washington, D.C.  20240            )
                                   )
HENRY M. PAULSON, JR.,             )
SECRETARY OF THE TREASURY          )
U.S. Department of the Treasury    )
1500 Pennsylvania Avenue, N.W.     )
Washington, D.C.  20220            )
                                   )
               Defendants.         )
                                   )

## COMPLAINT

1.    This is an action by an Indian tribe for an accounting of its trust funds, and for related relief based on the enumerations that follow.

## PARTIES

2.    Plaintiff, the Colorado River Indian Tribes ("CRIT"), is recognized by the United States as sovereign Indian tribe with legal rights and responsibilities, eligible for the special programs and services provided by the United States to Indians because of their status as Indian tribes.

3.      Defendant Dirk Kempthorne is the Secretary of the Interior and charged by law with carrying out the duties and responsibilities of the United States as trustee for CRIT.

4.      Defendant Henry M. Paulson, Jr. is the Secretary of the Treasury and in that capacity, is custodian of tribal trust funds with responsibility for the administration of such funds and the preparation and maintenance of records in connection with those funds.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1362.  This is a civil action brought by an Indian tribe and arises under the Constitution, treaties and agreements between the United States and CRIT, federal common law, and the federal statutes governing the administration and management of property held by the United States in trust for tribes.  The Court also has jurisdiction under 28 U.S.C. § 1361, 5 U.S.C. §§ 702, 706, as this is an action for injunctive relief to compel federal officials to perform a duty owed to the plaintiff.

6.      Venue is properly in this district under 28 U.S.C. § 1391(e) because this is an action in which Defendants are officers and employees of the United States acting in an official capacity, and a substantial part of the events or omissions giving rise to the claims herein have occurred within this judicial district.

## ALLEGATIONS

7.      CRIT is a federally recognized Indian tribe organized pursuant to the *Indian Reorganization Act of 1934* (48 Stat. 984; 25 U.S.C. § 461 et seq.)

8.      The Colorado River Indian Reservation ("Reservation") was established by an Act of Congress dated March 3, 1865 (13 Stat. 559) and expanded by subsequent Executive Orders of November 22, 1873, November 16, 1874, and May 15, 1976, with the southern boundary of

the Reservation to the east of the Colorado River confirmed by Public Law 109-47 (restoring lands covered by Executive Order dated November 22, 1915). CRIT occupies this Reservation of almost 270,000 acres of land located along both sides of the Colorado River in Arizona and California, and is the beneficial owner of this land, title to which is held in trust by the United States for the benefit of the Tribes. Public Law 88-302 (April 30, 1964).

9.    CRIT is the beneficial owner of the Reservation's land and natural resources, including valuable sand, gravel and other mineral reserves, within the Reservation, title to which is held in trust by the United States for the benefit of CRIT. CRIT's assets include land valuable for agricultural purposes. These trust assets also include fixtures and improvements located on the Reservation, including the Colorado River Indian Tribes Irrigation Project and the Headgate Rock Hydroelecric Power Plant which generates electrical power.

10.    Under law, tribal land held in trust by the United States is inalienable except as authorized by Congress. 25 U.S.C. § 177. Congress has granted the Secretary of the Interior authority to approve conveyances of certain interests in trust land, such as leases, easements, and rights of way. The law further establishes the terms and conditions under which such conveyances may be made, and generally requires that compensation be paid to the tribe for the use of tribal lands.

11.    By various Acts of Congress, commencing with statutes adopted more than a century ago, Congress authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depositary institutions for the benefit of the tribes. E.g., Act of March 3, 1883, c. 141, § 1, 22 Stat. 590, codified at 25 U.S.C. § 155. By subsequent statutes, Congress directed that interest be paid on tribal trust funds, and required that such trust funds be invested. See, e.g., Act of February 12,

1929, c. 178, 45 Stat. 1164, codified as amended, 25 U.S.C. § 161b; Act of June 24, 1938, 52

Stat. 1037, codified as amended, 25 U.S.C. § 162a.

12.    Defendants assumed control and management over trust property of CRIT.

Defendant Secretary of Interior has approved leases, easements, and grants to other interests in

trust lands of CRIT.  Both Defendants have assumed responsibility for collection, deposit and

investment of the income generated by trust land of CRIT.  These include funds generated by

sand and gravel bid deposits, bonuses, rents, lease and royalty payments, agricultural leases, and

judgments paid to CRIT.

13.    Because the United States holds tribal land in trust, it has assumed the obligations

of a trustee.  United States v. Mitchell, 463 U.S. 206, 225 (1983); Cobell v. Norton, 240 F.3d

1081 (D.C. Cir. 2001).  As trustee, the United States has a fiduciary relationship and obligations

of the highest responsibility and trust to administer the trust with the greatest skill and care

possessed by the trustee.  The United States "'has charged itself with moral obligations of the

highest responsibility and trust' in its conduct with Indians, and its conduct 'should therefore be

judged by the most exacting fiduciary standards.'"  Cobell, 240 F.3d at 1099 (quoting Seminole

Nation v. United States, 316 U.S. 286, 297 (1942)).

14.    The trust obligations of the United States include, among other duties, the duty to

ensure that tribal trust property and trust funds are protected, preserved and managed so as to

produce a maximum return to the tribal owner consistent with the trust character of the property.

15.    The trust obligations of the United States include, among other duties, the duty:

to maintain adequate records with respect to the trust property; to maintain adequate systems and

controls to guard against error or dishonesty; to provide regular and accurate accountings to the

trust beneficiaries; to refrain from self-dealing or benefiting form the management of the trust property.

16.    Congress has charged the Defendants with fulfilling the obligation of the United States as trustee and with responsibility for the administration and management of all trust property of CRIT and/or assets to be used for the benefit of CRIT.

17.    Defendants control all the books and records of account relating to trust funds and trust property and/or assets to be used for the benefit of CRIT.. Defendants, however, have never rendered a reliable, accurate or complete accounting to CRIT for its trust monies, trust assets and/or assets to be used for the benefit of CRIT. Defendants have further failed to establish any effective system or provision for regular or periodic accounting for the trust property and funds. As a consequence, Defendants have kept and continue to keep CRIT, as the trust beneficiary, uninformed as to the trust property it owns, what income the trust property has produced, and what disposition has been made of the income.

18.    As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, among others, there are massive and long-standing problems with the Defendants' administration of Indian trust funds. After a series of oversight hearings on Interior's management of Indian trust funds, Congress issued a report condemning those practices. See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund, H.R. Rept. No. 102-499, 102d Cong. 2d Sess. (1992). As Congress found:

> Scores of reports over the years by the Interior Department's Inspector General, the U.S. General Accounting Office, the Office of Management and Budget, have documented significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities, and to prudently manage the trust funds [Id. at 2] . . .

The Bureau has repeatedly ignored directives to undertake needed management reform measures. [Id. at 3] . . .

As a result of this dismal history of inaction and incompetence, there is no assurance that the Bureau actually desires to, or will, make any substantial advancement toward rectifying the basic financial management failures brought to their attention. Despite a decade of initiatives, the Bureau's headquarters leadership and accountability continue to be woefully inadequate. . . .

It is apparent that top Interior Department officials have utterly failed to grasp the human impact of its financial management of the Indian trust fund. The Indian trust fund is more than balance sheets and accounting procedures. These moneys are crucial to the daily operations of native American tribes and a source of income to tens of thousands of native Americans. [Id. at 5.]

Congress further found the Defendants' administration of Indian trust funds to be:

Grossly inadequate in numerous important respects. The Bureau [of Indian Affairs] has failed to accurately account for trust fund moneys. Indeed, it cannot even provide account holders with meaningful periodic statements on their balances. It cannot consistently and prudently invest trust funds and pay interest to account holders. It does not have consistent written policies or procedures that cover all of its trust fund accounting practices. Under the management of the Bureau of Indian Affairs, the Indian trust fund is equivalent to a bank that doesn't know how much money it has. [Id. at 56.]

19.    Upon information and belief, Defendants' mismanagement of trust funds has resulted in losses to trust beneficiaries. However, the extent of such losses is unknown to CRIT because Defendants have failed to provide CRIT with a reliable, accurate or complete accounting of its trust funds, and further have failed to maintain accurate books and records of account, lost and destroyed relevant trust account records, failed or refused to disclose known losses to the trust beneficiaries, and failed or refused to reimburse trust beneficiaries for losses to their trust funds. See Misplaced Trust, H.R. Rept. No. 102-499 at 37-41.

20.    By the Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, Congress imposed two requirements on Defendants: 1) that they audit and reconcile tribal trust funds, and 2) that they provide the tribes with an accounting of such funds. Congress reaffirmed the two mandates of the 1987 Act in subsequent statutes, namely the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990. By these Acts, Congress further required that the Defendants certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

21.    To protect the rights of tribes until accountings of their trust funds could be completed, Congress has provided, in each Interior Department Appropriations Act since 1990 that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63, 115 Stat. 414; Act of February 20, 2003, Pub. L. 108-7, 117 Stat. 1; Act of February 20,

2003, Pub. L. No. 108, 117 Stat. 11; Act of November 10, 2003, Pub. L. 108-108; Act of December 8, 2004, Pub. L. 108-447; and the Act of August, 2, 2005, Pub. Law 109-54.

22.    On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, codified at 25 U.S.C. §§ 4001-61. Under this Act, Congress recognized the United States' pre-existing trust responsibilities, and charged the Defendants with additional responsibilities to ensure proper discharge of the trust responsibilities of the United States. These include the duty to provide periodic, timely accountings of trust funds to tribal and individual Indian beneficiaries, and the duty to cause an annual audit of all trust funds to be conducted. 25 U.S.C. § 4011; 25 U.S.C. § 162a (d).

23.    As evidenced by reports issued by Interior Department Inspector General, the General Accounting Office, and the Office of Management and Budget, among others, notwithstanding the foregoing Acts of Congress, Defendants have continued to fail to implement the reforms required by law. The Defendants' continued failure to implement reforms required by Congress and to provide timely and meaningful accountings is now the subject of pending litigation in federal court, Cobell v. Norton, No. 96-1285 (D.D.C.). The proceedings in that case, which are focused on trust accounts of individual Indians, confirm the Government's fiduciary obligations to all Indian trust beneficiaries and the Government's breach of those obligations by failing to account. See Cobell v. Babbitt, 91 F. Supp. 2d 1 (D.C.C. 1999), aff'd, 240 F.3d 1081 (D.C. Cir. 2001).

24.    In the early 1990's, the United States Department of the Interior entered into a contract with Arthur Andersen accounting firm under which Arthur Andersen was to provide a reconciliation of certain tribal trust fund accounts.

25.     CRIT is in receipt of a report prepared by Arthur Anderson and dated January 1996, which was reportedly delivered to CRIT at some point in 1996. The report is entitled "Tribal Trust Funds Reconciliation Project, Agreed-upon Procedures and Findings Report for Colorado River Indian Tribes." CRIT is also in receipt of certain additional documents and materials that Defendant has characterized as additions and supplements to the Arthur Andersen report. CRIT requested that the Defendants provide it with the 1996 Arthur Andersen report along with any relevant supplements and work materials. On or about October 31, 2006, Mr. John H. McClanahan, Tribal Trust Accounting Program Manager, hand delivered two (2) compacts disks (marked "CD1" and "CD2" respectively) and one (1) digital video disk to Plaintiff's counsel. Hereinafter CRIT will refer to document marked with "Bates" numbers 831000177473-0001 to -0070 that was included on CD1 as the "Andersen report" or "AA report."

26.     In the AA Report, Arthur Andersen expressly states that the work done does "not constitute an audit made in accordance with generally accepted auditing standards."

27.     The Andersen report was not certified by an independent party as required by the Acts of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; November 5, 1990, Pub. L No 101-512, 104 Stat. 1915, and November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990, described in paragraph 18 above. Similar reports prepared by Arthur Andersen for other tribes have been criticized by the General Accounting Office, among others. See United States General Accounting Office, Report to Senate Committee on Indian Affairs, BIA's Tribal Trust Fund Account Reconciliation Results, GAO Report No. B-266127, May 3, 1996.

28.     The Andersen report does not constitute a reliable, accurate or complete accounting of CRIT's trust funds because, among other reasons: a) the report was not conducted

pursuant to generally accepted accounting principles, but was based on procedures defined by the Bureau of Indian Affairs, which imposed limitations on the scope of the work and made changes in methodologies over the course of the project that were not disclosed to CRIT; b) the report was premised on the erroneous assumption that an accounting of trust funds could be done based on review of information recorded in the Bureau of Indian Affairs' accounting system, without determining whether all receipts or income due had been collected and properly recorded by the Bureau, and therefore fails to address the possibility that materially significant transactions were not recorded by the Bureau or that the information as recorded by the Bureau was inaccurate or in error; c) the report does not disclose adjustments that were recommended by Arthur Andersen but which the Bureau of Indian Affairs did not accept; d) the report fails to address many transactions where accounting records could not be located. See United States General Accounting Office, Report to Senate Committee on Indian Affairs, BIA's Tribal Trust Fund Account Reconciliation Results, GAO Report No. B-266127, May 3, 1996.

29.    CRIT did not accept the AA report as a full and complete accounting, nor has it accepted the balances of its trust funds, as reflected in the Andersen report.

30.    To date, the Defendants have failed to provide CRIT with the legally required accounting of its trust funds.

## COUNT I
### Declaratory Judgment

31.    CRIT realleges and incorporates by reference the allegations contained in paragraphs 1 through 30 above.

32.    Defendants owe CRIT a fiduciary duty and obligations of the highest responsibility and trust to administer CRIT's trust property with the greatest skill and care possessed by the trustee.

33.    Defendants fiduciary duties include, among others, the duty to provide CRIT with a full and complete accounting of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT.

34.    Defendants have failed to provide CRIT with an accounting of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT and this failure is a breach of Defendants' fiduciary duties to CRIT in violation of federal law.

35.    CRIT is entitled to a declaratory judgment that the Defendants have not provided CRIT with a full and complete accounting of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT as required by law.

## COUNT II
### Injunction Compelling an Accounting

36.    CRIT realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 above.

37.    Defendants' continuing failure to provide CRIT with complete and accurate accountings of its trust funds, trust assets and/or assets to be used for the benefit of CRIT will cause CRIT irreparable injury, as records necessary for proper accounting have been, and may continue to be lost or destroyed, depriving CRIT of the information essential to determining whether these assets and funds have been properly administered.

38.    CRIT is entitled to declaratory and injunctive relief requiring Defendants to provide CRIT with a  full and complete accounting of all of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT.

**WHEREFORE**, CRIT prays for the following relief:

1.    For a declaration that the Defendants have not provided CRIT with a full and complete accounting of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT as required by law;

2.    For an injunction requiring the Defendants to provide a full and complete accounting of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT;

3.    For an award of attorneys fees and costs as provided by law; and

4.    For such other relief as may be just and equitable.


Dated:  December __, 2006                              Respectfully submitted,

                                                       HOLLAND & KNIGHT LLP

                                              By:    _____
                                                     Steven D. Gordon (D.C. Bar No. 219287)
                                                     Lynn E. Calkins (D.C. Bar No. 445854)
                                                     Stephen J. McHugh (D.C. Bar No. (485148)
                                                     Holland & Knight L.L.P.
                                                     2099 Pennsylvania Ave. NW, Suite 100
                                                     Washington, D.C. 20006
                                                     202-955-3000 (phone)
                                                     202-955-5564 (fax)

                                                     *Counsel for Plaintiff the Colorado River
                                                     Indian Tribes*

*Of Counsel*

Eric N. Shepard
Attorney General
Colorado River Indian Tribes
Route 1, Box 23-B
Parker, Arizona 85344

**WHEREFORE**, CRIT prays for the following relief:

1.     For a declaration that the Defendants have not provided CRIT with a full and complete accounting of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT as required by law;

2.     For an injunction requiring the Defendants to provide a full and complete accounting of CRIT's trust funds, trust assets and/or assets to be used for the benefit of CRIT;

3.     For an award of attorneys fees and costs as provided by law; and

4.     For such other relief as may be just and equitable.


Dated:  December 27, 2006                          Respectfully submitted,

                                                   HOLLAND & KNIGHT LLP

                                          By: _____
                                                   Steven D. Gordon (D.C. Bar No. 219287)
                                                   Lynn E. Calkins (D.C. Bar No. 445854)
                                                   Stephen J. McHugh (D.C. Bar No. 485148)
                                                   Holland & Knight L.L.P.
                                                   2099 Pennsylvania Ave. NW, Suite 100
                                                   Washington, D.C. 20006
                                                   202-955-3000 (phone)
                                                   202-955-5564 (fax)

                                                   *Counsel for Plaintiff the Colorado River
                                                   Indian Tribes*

*Of Counsel*

Eric N. Shepard
Attorney General
Colorado River Indian Tribes
Route 1, Box 23-B
Parker, Arizona 85344

# 4170187_v4

12

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

The Colorado River Indian Tribes

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Dirk Kempthorne, Secretary of the Interior
Henry M. Paulson, Jr., Secretary of the Treasury

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)    11001
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

### (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Steven D. Gordon, Lynn E. Calkins, Stephen J. McHugh
Holland & Knight LLP
2099 Pennsylvania Ave. N.W., Suite 100
Washington, D.C. 20006
202-955-3000 (phone)

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*

☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ◉ C. *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If
Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)*     OR     ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Action for accounting pursuant to 25 U.S.C. §§ 155, 161b, 162a, 177, and 4001-61.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ ⌐ 0 ⌐   Check YES only if demanded in compla   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE  12/27/06    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.